FILED
MAY 12 2021
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:21CR00311 MTS/PLC |
| ) | |
| PORSHIA L. THOMAS, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times material to this Indictment, unless otherwise specified below:

1. Defendant PORSHIA L. THOMAS resided in St. Louis, Missouri, within the Eastern District of Missouri.

2. Couture Trading Inc. was a fictitious business that was registered as a corporation with the Montana Secretary of State's Office on or about April 7, 2020. According to documents filed with the Montana Secretary of State's Office, Couture Trading had a physical address located at 9107 Wilshire Blvd, Unit 450, Beverly Hills, California 90210. Also according to documents filed with the Montana Secretary of State's Office, THOMAS was the Director, Vice President, Secretary, and Treasurer of Couture Trading. In those same documents, J.B. was listed as Couture Trading's President.

3. On or about April 30, 2020, THOMAS—acting on behalf of Couture Trading—applied for a certificate of authority from the Missouri Secretary of State's Office for Couture Trading to

1

operate as a foreign, for-profit corporation. In her application, THOMAS listed herself as the President and Director of Couture Trading, and THOMAS listed J.B. as the Vice President. Couture Trading received authorization from the Missouri Secretary of State to transact business in Missouri as a foreign entity on or about April 30, 2020.

4. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

6. To obtain a PPP loan, a qualifying business is required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application requires the business to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) is required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications are used to calculate the amount of money the small business is eligible to

2

receive under the PPP. In addition, businesses applying for PPP loans are required to submit documentation supporting their payroll expenses.

7. A PPP loan application is then processed by a participating lender. If a PPP loan application is approved, the participating lender funds the loan using its own monies, which are then guaranteed by the SBA. Generally, in the event that the borrower defaults on a PPP loan, the SBA will purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

8. PPP loan funds are required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities for the business. In the PPP loan application (SBA Form 2483), the borrower must certify that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." In that same application, the borrower must also certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan toward payroll expenses.

9. First Home Bank and Wells Fargo Bank, N.A. each were financial institutions within the meaning of Title 18, United States Code, Sections 20 and 1344, the deposits of which are insured by the Federal Deposit Insurance Corporation.

10. Fundera Inc., headquartered at 123 William Street, New York, New York, 10038, served as a referral agent for Couture Trading's fraudulent PPP loan application to First Home Bank.

## COUNT 1
## (Bank Fraud: 18 U.S.C. § 1344(2) and 2)
### Scheme and Artifice to Defraud

11. Paragraphs 1-10 are realleged and incorporated by reference as if fully set forth herein.

12. Beginning no later than in or about April 2020, and continuing through at least in or about September 2020, in the Eastern District of Missouri and elsewhere, the defendant,

**PORSHIA L. THOMAS**,

devised and intended to devise a scheme and artifice to obtain moneys, funds, credits, assets, securities and other property owned by, or under the custody and control of First Home Bank, a financial institution, by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose and Object of the Scheme

13. It was the purpose and object of the scheme for THOMAS to fraudulently obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of First Home Bank, namely, the PPP loan proceeds, and to spend those proceeds in a manner not authorized under the PPP.

### Manner and Means

14. In furtherance of the scheme to defraud, and to accomplish its unlawful objects, the following manner and means were used, among others:

15. On or about April 30, 2020, THOMAS—acting on behalf of Couture Trading—applied for a certificate of authority from the Missouri Secretary of State's Office for Couture Trading to operate as a foreign, for-profit corporation. Couture Trading received authorization from the Missouri Secretary of State to transact business in Missouri as a foreign entity on or about April 30, 2020.

16. On or about July 15, 2020, as part of the scheme to defraud, in the Eastern District of Missouri, THOMAS submitted and caused to be submitted a fraudulent PPP loan application (SBA Form 2483) to Fundera Inc., a referral agent for First Home Bank. Fundera Inc. subsequently provided THOMAS' fraudulent PPP loan application, along with THOMAS' supporting documents, to First Home Bank, the loan processor and lender for the PPP loan. THOMAS subsequently reaffirmed her materially false statements that she made in the fraudulent PPP loan application in a "Borrower's Certification" that she provided to First Home Bank on or about September 3, 2020.

17. In the fraudulent PPP loan application, THOMAS knowingly made and caused to be made numerous materially false and fraudulent representations. Among other things, the application that THOMAS submitted and caused to be submitted on behalf of Couture Trading made all of the following materially false and fraudulent representations:

    a. THOMAS falsely claimed that Couture Trading had a business address of "9107 Wilshire Blvd., Suite 450, Beverly Hills, CA, 90210." THOMAS knew that this was false, and that in truth and fact, Couture Trading did not have a business address.

    b. THOMAS falsely claimed that the "[n]umber of [e]mployees" of Couture Trading was "15." THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any employees.

    c. THOMAS falsely claimed that Couture Trading had an "[a]verage [m]onthly [p]ayroll" of "$120,000.00." THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any payroll expenses.

    d. THOMAS falsely claimed that the "[p]urpose of the loan" was to assist Couture Trading with the following:

☒ Payroll    ☐ Lease / Mortgage Interest    ☒ Utilities    ☒ Other (explain): <u>Debt interest, Rent,</u>

THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any expenses associated with payroll, utilities, debt interest, and rent.

  e. THOMAS falsely claimed that Couture Trading was "in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes." THOMAS knew that this was false, and that in truth and fact, Couture Trading was not in operation on February 15, 2020, and Couture Trading did not pay payroll taxes for any employees.

  f. THOMAS falsely claimed that "[c]urrent economic uncertainty" made the "loan request necessary to support the ongoing operations" of Couture Trading. THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any ongoing operations.

  g. THOMAS falsely claimed that "[t]he funds will be used to retain works and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." THOMAS knew that this was false, and that in truth and fact, THOMAS did not intend to spend the loan funds on authorized expenses.

  18. In support of the fraudulent PPP loan application, THOMAS submitted and caused to be submitted several fraudulent documents on behalf of Couture Trading. The fraudulent documents that THOMAS submitted and caused to be submitted on behalf of Couture Trading in support of the fraudulent PPP loan application included the following:

  a. A fraudulent IRS Form 941 (for the first quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated March 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

      b.    A nearly identical fraudulent IRS Form 941 (for the second quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated June 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

      c.    A nearly identical fraudulent IRS Form 941 (for the third quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated September 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

      d.    A nearly identical fraudulent IRS Form 941 (for the fourth quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated December 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

      e.    A fraudulent IRS Form 1120 (for tax year 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's gross receipts or sales as $1,765,777, and also reporting cost of goods sold as $1,400,000. This fraudulent document was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any

gross receipts or costs associated with goods and Couture Trading did not file this Form 1120 with the IRS.

  f. Several bank statements, which were listed as belonging to "Couture Trading Inc." at Wells Fargo, with the account number listed as "XXXXXX0549." THOMAS knew that the information in these documents was false, and that in truth and fact, Couture Trading did not have a Wells Fargo bank account.

  g. A letter on Wells Fargo letterhead, which was purportedly signed by "[S.J.], Wells Fargo Branch Manager." That letter included the following: "This letter is to verify, *Couture Trading Inc.*, as a Wells Fargo Business Choice Checking member. The authorized signer for this account is Ms. *Porshia L. Thomas*." THOMAS knew that the information in this letter was false, and that in truth and fact, Couture Trading did not have a Wells Fargo bank account, and THOMAS also knew that S.J. did not sign the letter. Furthermore, THOMAS did not seek or obtain S.J.'s authorization to use his name in order to obtain the PPP loan.

19. It was part of the scheme and artifice that THOMAS used the name of a Wells Fargo Branch Manager, S.J., to convince First Home Bank that Couture Trading had a valid Wells Fargo bank account. THOMAS used S.J.'s name without his knowledge or consent, and falsely represented that S.J. signed the letter verifying that Couture Trading had a Wells Fargo bank account, when in truth and fact, Couture Trading did not have a Wells Fargo bank account.

20. It was further part of the scheme and artifice that THOMAS did not seek or obtain S.J.'s authorization to use his name in order to obtain the PPP loan.

21. On or about September 3, 2020, THOMAS—acting on behalf of Couture Trading—provided to First Home Bank a "Borrower's Certification" form. The Borrower's Certification form, according to its own terms, was completed by THOMAS in order to "induce FIRST HOME BANK ('Lender') to make a U. S. Small Business Administration ('SBA') guaranteed Loan . . . to

8

Couture Trading." In the Borrower's Certification form, THOMAS knowingly made numerous materially false and fraudulent representations, including all of the following:

    a.    "[THOMAS] hereby certifies and agrees that . . . [t]he proceeds of the Loan will be used to (a) retain workers and maintain payroll and/or (b) make mortgage interest payments, lease payments, and utility payments, and for no other purpose(s) whatsoever."

    b.    "[THOMAS] hereby certifies and agrees that . . . [a]ll other certifications set forth in the Paycheck Protection Program Borrower Application Form, SBA Form 2483, as submitted by [THOMAS] to [FIRST HOME BANK] are incorporated herein by reference, are true and correct, and are hereby reaffirmed to [FIRST HOME BANK]."

    c.    "[THOMAS] hereby certifies and agrees that . . . [a]ll documents submitted to [FIRST HOME BANK], including without limitation, payroll processor records, payroll tax filings, Form 1099-MISC, or bank records, are true and correct."

    d.    "[THOMAS] hereby certifies and agrees that . . . [COUTURE TRADING] was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes."

    e.    "[THOMAS] hereby certifies and agrees that . . . [c]urrent economic uncertainty makes this Loan request necessary to support the ongoing operations of the Borrower."

22.    On or about September 8, 2020, First Home Bank disbursed approximately $291,600 in PPP loan proceeds to Couture Trading. Those funds were wired from First Home Bank into an account controlled by THOMAS.

23.    It was a further part of the scheme that, once THOMAS obtained the proceeds of the loans issued to Couture Trading, she knowingly spent those proceeds on numerous items that she knew were not authorized under the PPP. Among other things, THOMAS knowingly used proceeds from the PPP loans for all of the following unauthorized expenses:

    a.    to purchase a 2018 Audi S5 Sportback Quattro, bearing vehicle identification

9

number ("VIN") WAUC4CF59JA055741;

      b.    to pay J.B., who had no known legitimate employment relationship with Couture Trading, over $75,000;

      c.    to purchase items at Neiman Marcus, Ulta, Bath and Body Works, and Victoria's Secret with no legitimate business purpose; and

      d.    to pay for a variety of THOMAS' personal day-to-day living expenses, unrelated to the expenses authorized under the PPP and for which THOMAS had attested she intended to use the loan proceeds.

24.    On or about the date set forth below, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant,

**PORSHIA L. THOMAS,**

executed and attempted to execute the scheme and artifice set forth above, to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of First Home Bank, which was a financial institution as defined in Title 18, United States Code, Section 20, by means of material false and fraudulent pretenses, representations, and promises, in that Defendant submitted a false and fraudulent PPP loan application for the purpose of obtaining money, funds, credits, assets, securities, and other property owned by, and under the custody and control of First Home Bank, as described below:

| Count | Approx. Date | Summary Description | Loan Amount |
|---|---|---|---|
| 1 | July 15, 2020 | THOMAS submitted the fraudulent PPP loan application on behalf of Couture Trading to obtain funds from First Home Bank | $291,600.00 |

All in violation of Title 18, United States Code, Section 1344(2) and 2.

## COUNT 2
### (Aggravated Identity Theft: 18 U.S.C. § 1028A and 2)

25. Paragraphs 1-24 are realleged and incorporated by reference as if fully set forth herein.

26. On or about the date set forth below, in the Eastern District of Missouri, the defendant,

**PORSHIA L. THOMAS,**

did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, bank fraud, in violation of 18 U.S.C. § 1344, knowing that the means of identification belonged to another actual person, in that the defendant used the name of S.J. in order to apply for and obtain a fraudulent PPP loan funded by a federally insured financial institution within the meaning of 18 U.S.C. § 20, all without the knowledge or authorization of S.J., as described below:

| Count | Approx. Date | Means of Identification | Financial Institution | Amount |
|---|---|---|---|---|
| 2 | July 15, 2020 | Name of S.J. | First Home Bank | $291,600.00 |

All in violation of Title 18, United States Code, Section 1028A(a)(1) and 2.

### FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of offenses in violation of Title 18, United States Code, Section 1344, as set forth in Count 1, Defendant PORSHIA L. THOMAS shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation. Subject to forfeiture is a sum of money equal to the total value of any

property, real or personal, constituting or derived from any proceeds traceable to such violation, which is at least $85,943.48.

2. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney