UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cr-00311-MTS |
| | ) | |
| PORSHIA L. THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Porshia L. Thomas, represented by defense counsel Mark A. Hammer, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1, the United States agrees to move for dismissal of Count 2 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to the events described in the indictment, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant knowingly executed a scheme to obtain any of the moneys under the custody and control of a financial institution by means of materially false or fraudulent representations;

**Two**, the defendant did so with intent to defraud; and

**Three**, the financial institution was insured by the Federal Deposit Insurance Corporation.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

2

The defendant admits that from between April of 2020 and September of 2020, in the Eastern District of Missouri, she knowingly executed a scheme to obtain money under the custody and control of First Home Bank, a financial institution insured by the F.D.I.C., by means of materially false or fraudulent representations, and that she did so with the intent to defraud.

Furthermore, First Home Bank was a financial institution within the meaning of Title 18, United States Code, Section 20, because it was a financial institution insured by the Federal Deposit Insurance Corporation.

Couture Trading Inc. was a fictitious business that was registered as a corporation with the Montana Secretary of State's Office on or about April 7, 2020. According to documents filed with the Montana Secretary of State's Office, Couture Trading had a physical address located at 9107 Wilshire Blvd, Unit 450, Beverly Hills, California 90210. Also according to documents filed with the Montana Secretary of State's Office, Defendant Porshia L. Thomas ("THOMAS") was the Director, Vice President, Secretary, and Treasurer of Couture Trading. In those same documents, J.B. was listed as Couture Trading's President.

On or about April 30, 2020, THOMAS—acting on behalf of Couture Trading—applied for a certificate of authority from the Missouri Secretary of State's Office for Couture Trading to operate as a foreign, for-profit corporation. In her application, THOMAS listed herself as the President and Director of Couture Trading, and THOMAS listed J.B. as the Vice President. Couture Trading received authorization from the Missouri Secretary of State to transact business in Missouri as a foreign entity on or about April 30, 2020.

Fundera Inc., headquartered at 123 William Street, New York, New York, 10038, served as a referral agent for Couture Trading's fraudulent PPP loan application to First Home Bank.

3

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

To obtain a PPP loan, a qualifying business is required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application requires the business to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) is required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for PPP loans are required to submit documentation supporting their payroll expenses.

4

A PPP loan application is then processed by a participating lender. If a PPP loan application is approved, the participating lender funds the loan using its own monies, which are then guaranteed by the SBA. Generally, in the event that the borrower defaults on a PPP loan, the SBA will purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

PPP loan funds are required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities for the business. In the PPP loan application (SBA Form 2483), the borrower must certify that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." In that same application, the borrower must also certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan toward payroll expenses.

It was the purpose and object of the scheme for THOMAS to fraudulently obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of First Home Bank, namely, the PPP loan proceeds, and to spend those proceeds in a manner not authorized under the PPP.

In furtherance of the scheme to defraud, and to accomplish its unlawful objects, on or about July 15, 2020, as part of the scheme to defraud, in the Eastern District of Missouri, THOMAS submitted a fraudulent PPP loan application (SBA Form 2483) to Fundera Inc., a referral agent for

5

First Home Bank. Fundera Inc. subsequently provided THOMAS' fraudulent PPP loan application, along with THOMAS' supporting documents, to First Home Bank, the loan processor and lender for the PPP loan. THOMAS subsequently reaffirmed her materially false statements that she made in the fraudulent PPP loan application in a "Borrower's Certification" that she provided to First Home Bank on or about September 3, 2020.

In the fraudulent PPP loan application, THOMAS knowingly made numerous materially false and fraudulent representations. Among other things, the application that THOMAS submitted on behalf of Couture Trading made all of the following materially false and fraudulent representations:

a.     THOMAS falsely claimed that Couture Trading had a business address of "9107 Wilshire Blvd., Suite 450, Beverly Hills, CA, 90210." THOMAS knew that this was false, and that in truth and fact, Couture Trading did not have a business address.

b.     THOMAS falsely claimed that the "[n]umber of [e]mployees" of Couture Trading was "15." THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any employees.

c.     THOMAS falsely claimed that Couture Trading had an "[a]verage [m]onthly [p]ayroll" of "$120,000.00." THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any payroll expenses.

d.     THOMAS falsely claimed that the "[p]urpose of the loan" was to assist Couture Trading with the following:

☒ Payroll    ☐ Lease / Mortgage Interest    ☒ Utilities    ☒ Other (explain):    Debt interest, Rent,

THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any expenses associated with payroll, utilities, debt interest, and rent.

e.    THOMAS falsely claimed that Couture Trading was "in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes." THOMAS knew that this was false, and that in truth and fact, Couture Trading was not in operation on February 15, 2020, and Couture Trading did not pay payroll taxes for any employees.

f.    THOMAS falsely claimed that "[c]urrent economic uncertainty" made the "loan request necessary to support the ongoing operations" of Couture Trading. THOMAS knew that this was false, and that in truth and fact, Couture Trading had few if any ongoing operations.

g.    THOMAS falsely claimed that "[t]he funds will be used to retain works and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." THOMAS knew that this was false, and that in truth and fact, THOMAS did not intend to spend the loan funds on authorized expenses.

In support of the fraudulent PPP loan application, THOMAS submitted several fraudulent documents on behalf of Couture Trading. The fraudulent documents that THOMAS submitted on behalf of Couture Trading in support of the fraudulent PPP loan application included the following:

a.    A fraudulent IRS Form 941 (for the first quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated March 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

b.    A nearly identical fraudulent IRS Form 941 (for the second quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated June 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

c.    A nearly identical fraudulent IRS Form 941 (for the third quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated September 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

d.    A nearly identical fraudulent IRS Form 941 (for the fourth quarter of 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's quarterly wages totaling $350,000 for 15 employees. This fraudulent document was dated December 12, 2019, and was signed by THOMAS. THOMAS knew that the information in this document was false, and that in truth and fact, Couture Trading had few if any payroll expenses, and Couture Trading did not file this Form 941 with the IRS.

e.    A fraudulent IRS Form 1120 (for tax year 2019), representing that Couture Trading had an "Employer Identification Number" of "85-0818530," and reporting Couture Trading's gross receipts or sales as $1,765,777, and also reporting cost of goods sold as $1,400,000. This fraudulent document was signed by THOMAS. THOMAS knew that the

8

information in this document was false, and that in truth and fact, Couture Trading had few if any gross receipts or costs associated with goods and Couture Trading did not file this Form 1120 with the IRS.

f.      Several bank statements, which were listed as belonging to "Couture Trading Inc." at Wells Fargo, with the account number listed as "XXXXXX0549." THOMAS knew that the information in these documents was false, and that in truth and fact, Couture Trading did not have a Wells Fargo bank account.

g.      A letter on Wells Fargo letterhead, which was purportedly signed by "[S.J.], Wells Fargo Branch Manager." That letter included the following: "This letter is to verify, *Couture Trading Inc.*, as a Wells Fargo Business Choice Checking member. The authorized signer for this account is Ms. *Porshia L. Thomas*." THOMAS knew that the information in this letter was false, and that in truth and fact, Couture Trading did not have a Wells Fargo bank account, and THOMAS also knew that S.J. did not sign the letter. Furthermore, THOMAS did not seek or obtain S.J.'s authorization to use his name in order to obtain the PPP loan.

It was part of the scheme and artifice that THOMAS used the name of a Wells Fargo Branch Manager, S.J., to convince First Home Bank that Couture Trading had a valid Wells Fargo bank account. THOMAS used S.J.'s name without his knowledge or consent, and falsely represented that S.J. signed the letter verifying that Couture Trading had a Wells Fargo bank account, when in truth and fact, Couture Trading did not have a Wells Fargo bank account.

On or about September 3, 2020, THOMAS—acting on behalf of Couture Trading—provided to First Home Bank a "Borrower's Certification" form. The Borrower's Certification form, according to its own terms, was completed by THOMAS in order to "induce FIRST HOME BANK

9

('Lender') to make a U. S. Small Business Administration ('SBA') guaranteed Loan . . . to Couture

Trading." In the Borrower's Certification form, THOMAS knowingly made numerous materially

false and fraudulent representations, including all of the following:

        a.    "[THOMAS] hereby certifies and agrees that . . . [t]he proceeds of the Loan will

be used to (a) retain workers and maintain payroll and/or (b) make mortgage interest payments,

lease payments, and utility payments, and for no other purpose(s) whatsoever."

        b.    "[THOMAS] hereby certifies and agrees that . . . [a]ll other certifications set forth

in the Paycheck Protection Program Borrower Application Form, SBA Form 2483, as submitted

by [THOMAS] to [FIRST HOME BANK] are incorporated herein by reference, are true and

correct, and are hereby reaffirmed to [FIRST HOME BANK]."

        c.    "[THOMAS] hereby certifies and agrees that . . . [a]ll documents submitted to

[FIRST HOME BANK], including without limitation, payroll processor records, payroll tax

filings, Form 1099-MISC, or bank records, are true and correct."

        d.    "[THOMAS] hereby certifies and agrees that . . . [COUTURE TRADING] was

in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes."

        e.    "[THOMAS] hereby certifies and agrees that . . . [c]urrent economic uncertainty

makes this Loan request necessary to support the ongoing operations of the Borrower."

    On or about September 8, 2020, First Home Bank disbursed approximately $291,600 in PPP

loan proceeds to Couture Trading. Those funds were wired from First Home Bank into an account

controlled by THOMAS.

    It was a further part of the scheme that, once THOMAS obtained the proceeds of the loans

issued to Couture Trading, she knowingly spent those proceeds on numerous items that she knew

were not authorized under the PPP. Among other things, THOMAS knowingly used proceeds from the PPP loans for all of the following unauthorized expenses:

      a.    to purchase a 2018 Audi S5 Sportback Quattro, bearing vehicle identification number ("VIN") WAUC4CF59JA055741;

      b.    to pay J.B., who had no known legitimate employment relationship with Couture Trading, over $75,000;

      c.    to purchase items at Neiman Marcus, Ulta, Bath and Body Works, and Victoria's Secret with no legitimate business purpose; and

      d.    to pay for a variety of THOMAS' personal day-to-day living expenses, unrelated to the expenses authorized under the PPP and for which THOMAS had attested she intended to use the loan proceeds.

## 5. STATUTORY PENALTIES:

As to Count 1, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

## 6. U.S. SENTENCING GUIDELINES:  2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** As to Count 1, the parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply as to Count 1:

The parties agree that 12 levels should be added pursuant to Section 2B1.1(b)(1)(G) because the loss exceeds $250,000, but does not exceed $550,000. By executing the scheme to defraud as described above, the defendant fraudulently obtained $291,600 in loan funds.

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 16.

d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2) **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

13

     **b.** **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

     **c.** **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.** **OTHER:**

     **a.** **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

     **b.** **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

     **c.** **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the

term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

      **d.  <u>Mandatory Special Assessment</u>:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      **e.  <u>Possibility of Detention</u>:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      **f.  <u>Fines, Restitution and Costs of Incarceration and Supervision</u>:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c).  Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss.  The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**9.  <u>ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS</u>:**

      In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

16

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

17

12. **<u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

6/16/22
_____
Date

_____
DEREK J. WISEMAN
Assistant United States Attorney

June 15, 2022
_____
Date

_____
MARK A. HAMMER
Attorney for Defendant

Jun 15, 2022
_____
Date

_____
Porshia Thomas (Jun 15, 2022 12:10 CDT)
PORSHIA L. THOMAS
Defendant

18